[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff, Raid, Inc., a Massachusetts corporation, against Janet V. Andrew, Robert S. Andrew and Systech, Inc. (Systech) (collectively, the defendants) to enforce a judgment rendered against the defendants in Massachusetts. In its Connecticut complaint dated June 29, 2000, the plaintiff alleges the following pertinent facts: Both Janet V. Andrew and Robert S. Andrew are Connecticut residents. Systech is a corporation with its principal place of business in Connecticut. On April 26, 2000, the plaintiff obtained a judgment in a court in the Commonwealth of Massachusetts (Massachusetts) against all of the three defendants in the amount of $11,024.50. The judgment is due and the defendants have failed to pay such amount.
On August 31, 2000, the defendants filed two special defenses in this Connecticut action claiming that the judgment is invalid and unenforceable. In the first special defense the defendants claimed that the Massachusetts court lacked personal jurisdiction over them because the requirements of the Massachusetts long arm statute, Mass. Gen. Laws ch. 223A, § 3, were not met. In the second special defense, the defendants claimed that the Massachusetts court lacked personal jurisdiction over them because their due process rights under the United States Constitution and the Massachusetts Constitution were violated.
On August 31, 2000, the defendants filed a counterclaim alleging abuse CT Page 1557 of process. On October 3, 2000, the plaintiff filed a motion to strike the counterclaim and on October 23, 2000, the court, Mintz, J. granted the plaintiff's motion to strike. Raid, Inc. v. Andrew, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 178828 (October 23, 2000, Mintz, J.).
The case was referred for trial to Mary E. Sommer, an attorney trial referee (ATR), in accordance with General Statutes § 52-434 (a)(4) and Practice Book § 19-2A. The trial commenced on June 21, 2001, at which time, Systech was defaulted for failure to appear. Raid, Inc. v.Andrew, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 178828 (June 21, 2001, Tobin, J.).
The ATR submitted a report dated August 14, 2001 finding the following pertinent facts: (1) At all times relevant to this action Janet and Robert Andrew were residents of the State of Connecticut; (2) Robert S. Andrew was President of Storage Solutions, Inc. (SSI) and Janet V. Andrew was Secretary/Treasurer of SSI, subsequently named Systech, Inc., a Connecticut corporation located in Stamford, Connecticut; (3) on or about April 26, 2000, the plaintiff, a Massachusetts corporation, obtained a default judgment against the defendants in the amount of $11,024.50; (4) the plaintiff commenced this action to enforce the Massachusetts default judgment in the State of Connecticut; (5) as a condition of extending credit to SSI, the plaintiff required SSI to complete a credit application. On or about July 14, 1999, Janet V. Andrew completed the credit application, signed it as V.P/Treas. and faxed it to the plaintiff; (6) the information on the credit application is that of SSI's corporate bank account; (7) Janet V. Andrew subsequently signed three SSI checks payable to the plaintiff for goods ordered by SSI as follows; a check dated July 17, 1997, in the amount of $3,275, a check dated July 22, 1997, in the amount of $5,425 and a check dated July 24, 1999, in the amount of $1,490, for a total of $10,190; (8) the checks were printed business account checks of SSI; (9) Robert S. Andrew's sole contact with the plaintiff was a letter he wrote as President of SSI to the plaintiff regarding availability of funds in SSI's corporate bank account; (10) neither Janet V. Andrew nor Robert S. Andrew have any contact with the state of Massachusetts other than the actions they took as corporate officers of Systech.
The ATR concluded, on the basis of the above findings of fact, that: (1) the defendants' counterclaim alleging abuse of process is stricken because process in this case was utilized for the purpose intended; (2) Janet V. Andrew did not transact business in Massachusetts when she submitted a credit application and signed three SSI checks because she was acting in her capacity as a corporate officer and not as an individual; (3) furthermore, Janet V. Andrew did not transact business in CT Page 1558 Massachusetts when she signed three SSI checks because Mass. Gen. Laws ch. 106, § 3-402 (c) prohibits such individual liability; (4) Robert S. Andrew did not transact business in Massachusetts when he wrote a letter to the plaintiff in his capacity as President of SSI because when an agent acts within the scope of his authority by contracting with a third party for a known principal, and the third party did not contract with the agent personally, then the liability is upon the principal and not the agent; (5) based on the foregoing conclusions, neither Janet V. Andrew nor Robert S. Andrew had sufficient minimum contacts with Massachusetts to warrant Massachusett's assertion of long arm jurisdiction pursuant to Mass. Gen. Laws ch. 223 A, § 3 over Janet V. and Robert S. Andrew; (6) the defendants' special defense of lack of personal jurisdiction has been proven and is applicable in this case so that this court should not enforce the judgment against Janet V. and Robert S. Andrew; (7) judgment should enter against Systech for its failure to appear in this action, in the amount of $11,024.50 plus interest of $1,653.68, as authorized by statute.
As authorized by Practice Book § 19-14, the plaintiff filed objections to the report. The plaintiff claims that the ATR erred in that she: (1) stated that the court had not previously ruled on the motion to strike the counterclaim when in fact the court, Mintz, J. had ruled upon the motion and had granted it; Raid, Inc. v. Andrew, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 178828 (October 23, 2000, Mintz, J.); (2) stated that one of the three checks is "dated July 24, 1999" when in fact it is dated "July 24, 1997" (Plaintiff's Exhibit 10); (3) applied Mass. Gen. Laws ch. 106, § 3-402 (c) instead of applying Mass. Gen. Laws ch. 106, § 3-403 (2), which was in effect at the time of transactions; and (4) misapplied the law to the facts in not enforcing the judgment as to Janet V. Andrew.
The plaintiff's August 30, 2001 "Objection to Acceptance of Report" related only to the issues as to the defendant, Janet V. Andrew. No objection was filed by the plaintiff to the portions of the ATR's report as to the defendants, Systech, Inc. and Robert S. Andrew. This court therefore accepts the ATR's report as to those two defendants and finds that judgment should enter in favor of the defendant, Robert S. Andrew and judgment should enter in favor of the plaintiff, Raid, Inc., against the defendant, Systech, Inc., in the amount of $11,024.50 plus interest.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "The court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the CT Page 1559 report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Killion v. Davis, 257 Conn. 98, 102,776 A.2d 456 (2001). Killion stands for the proposition that the court's role in reviewing an attorney trial referee's report is in effect, a two part inquiry. First, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the trial court must review the report to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id., 103.
"[T]he trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. "While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, [nevertheless] it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found. . . . A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted; internal quotation marks omitted.) Id., 102; see Practice Book § 19-17 ("the court shall render such judgment as the law requires upon the facts in the record").
"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Meadowsv. Higgins, 249 Conn. 155, 162, 733 A.2d 172 (1999). Because the plaintiff did not file a transcript of the evidence taken, as required by Practice Book § 19-14, pursuant to its 2001 amendment thereto, it is "impossible for the court to ascertain whether there is support in the record for the referee's findings of fact. Therefore, the factual findings properly . . . [stand] uncorrected, and the court's role . . . [is] limited to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." (Internal quotation marks omitted.) Meadows v.CT Page 1560Higgins, supra, 249 Conn. 170 n. 10; see also Suburban Health Plan v.Yannes, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 067043 (May 2, 2001, Grogins, J.).
The plaintiff has presented, in essence, one major issue in his third and fourth objections to the ATR's report. That issue is whether the ATR misapplied the law to the facts in not enforcing the judgment as to Janet V. Andrew. The first and second objections are immaterial and do not have any effect on the outcome of the attorney trial referee's report. SeeConnecticut National Bank. v. 1234 Summer, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 109065 (August 31, 1993, Lewis, J.) (trial court entered judgment in accordance with attorney trial referee's report, noting that any errors in referee's report were immaterial).
This case implicates the full faith and credit clause of the United States constitution, which explicitly provides in article four, § 1, in relevant part: "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State." "Full faith and credit is a national policy, not a state policy. Its purpose is not merely to demand respect from one state for another, but rather to give us the benefits of a unified nation by altering the status of otherwise `independent, sovereign states.' Hence it is for federal law, not state law, to prescribe the measure of credit which one state shall give to another's judgment." Thomas v. Washington Gas Light Co., 448 U.S. 261,271 n. 15, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980).
"[A] judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits — had jurisdiction, that is, to render the judgment. . . . Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." (Internal quotation marks omitted.) UnderwritersNational Assurance Co. v. North Carolina Life Accident Health Ins.Guaranty Assn., 455 U.S. 691, 704-05, 102 S.Ct. 1357, 71 L.Ed.2d 558
(1982).
"Our Supreme Court has held that issues regarding the jurisdiction of a foreign court are determined by the law of the foreign state." Tri-StateTank Corp. v. Higganum Heating, Inc., 45 Conn. App. 798, 800, 699 A.2d 201
(1997), citing Smith v. Smith, 174 Conn. 434, 438, 389 A.2d 756 (1978). Therefore, this court will examine Massachusetts law to determine whether the Massachusetts court properly exercised jurisdiction over the defendants pursuant to Mass. Gen. Laws ch. 223A, § 3. CT Page 1561
Under Massachusetts law, "[g]enerally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses." Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979). "Generally speaking, inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case." (Internal quotation marks omitted.) Id., 2.
In this case, the applicable state long-arm statute is Mass. Gen. Laws ch. 223A, § 3. This statute "sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant. Jurisdiction is conferred only when some basis for jurisdiction enumerated in the statute has been established." (Internal quotation marks omitted.) Tatro v. Manor Care, Inc., 416 Mass. 763, 767,625 N.E.2d 549 (1994). Here, the plaintiff argues that the Massachusetts court had a basis of jurisdiction over Janet V. Andrew because she was transacting business in Massachusetts according to Mass. Gen. Laws ch. 223A, § 3 by signing three checks payable to the plaintiff for goods and by signing the credit application. This statute provides in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth. . . ." Mass. Gen. Laws ch. 223A, § 3.
For the purposes of personal jurisdiction, a nonresident that makes isolated purchases with a Massachusetts party has not transacted business in Massachusetts. Good Hope Industries, Inc. v. Ryder Scott Co., supra,378 Mass. 9 n. 14. "The attachment of jurisdiction over the defendant might well have implied that under § 3(A) all [p]urchasers could be rendered subject to long arm jurisdiction. So broad an interpretation would have promoted the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." Id; see Droukas v. Divers TrainingAcademy, Inc., 375 Mass. 149, 151-152, 376 N.E.2d 548 (1978) (without a showing of prior business with the plaintiff, nonresident's isolated purchase is insufficient to constitute transaction of business in Massachusetts within § 3(a)); "Automatic" Sprinkler Corp. of Americav. Seneca Foods Corp., 361 Mass. 441, 446, 280 N.E.2d 423, (1972) (nonresident defendant that signs purchase order, receives letters from Massachusetts plaintiff, and mailed payments to such plaintiff did not transact business in Massachusetts); Stanton v. AM General Corp., CT Page 15621998 Mass. App. Div. 40 (1998) (single purchase of goods is insufficient, without more, to constitute transacting business under § 3(a)); Leasecomm Corp. v. Crockett, 1998 Mass. App. Div. 6 (1998) ("[i]t is established that personal jurisdiction cannot be constitutionally asserted over a non-resident purchaser whose contacts with the forum state are limited to a single purchase of equipment, goods or services from a Massachusetts provider."); Telco Communications, Inc.v. New Jersey State Firemen's Mutual Benevolent Association,41 Mass. App. 225, 231-232, 669 N.E.2d 781 (1996) (nonresident entering into contract and conducting telephone or other communications has not done enough to satisfy § 3(a)); Nichols Associates, Inc. v.Starr, 4 Mass. App. 91, 96, 341 N.E.2d 909 (1976). ("contact . . . limited to the defendant's acceptance of services which the plaintiff simply chose to perform in Massachusetts" as opposed to some other state is insufficient to meet requirements of § 3(a)).
Furthermore, sending a credit application to a Massachusetts plaintiff also does not confer jurisdiction over a nonresident defendant. SeeLarchmont Engineering and IRR., Inc. v. Jade Realty Corp.,1996 Mass. App. Div. 187 (1996) (nonresident that telephoned Massachusetts plaintiff, accepted such plaintiff's bid to provide work, and forwarded credit application to plaintiff did not subject defendant to jurisdiction under Massachusetts long arm statute.)
This court finds that the ATR was correct in concluding that Janet V. Andrew did not transact business in Massachusetts and that consequently, Massachusetts did not have personal jurisdiction over Janet V. Andrew. Here, the three SSI checks that Janet V. Andrew signed in July, 1997, and sent to the plaintiff and the credit application she faxed to the plaintiff were isolated transactions in that there was no showing in the record of any previous or continuing relationship between the parties. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151-152,376 N.E.2d 548 (1978) (isolated purchase by non-resident without a showing of prior business with plaintiff, is insufficient to constitute transaction of business in Massachusetts within § 3(a)). Furthermore, the transaction had slight, if any, effect on commerce in Massachusetts. See Id. (nonresident's purchase of two marine engines was isolated transaction with slight effect on commerce of Massachusetts and did not constitute transacting business under Mass. Gen. Laws ch.223A, § 3(a)).
The plaintiff's third objection, that the ATR incorrectly applied Mass. Gen. Laws ch. 106, § 3-402 (c), instead of applying Mass. Gen. Laws ch. 106, § 3-403 (2) which was in effect at the time of transactions is incorrect. Mass. Gen. Laws ch. 106, § 3-403 (2) provided that: "An authorized representative who signs his own name to an CT Page 1563 instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity; (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person but does show that the representative signed in a representative capacity." This statute was repealed in 1998 when Massachusetts adopted the revised Article 3 of the Uniform Commercial Code (UCC).
The ATR correctly applied the revised version of Mass. Gen. Laws ch. 106, § 3-403 (2) which is now Mass. Gen. Laws ch. 106, § 3-402 (c). Mass. Gen. Laws ch. 106, § 3-402 (c) provides that: "If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person." The UCC Comment to Mass. Gen. Laws ch. 106, § 3-402 (c) states that: "Subsection (c) is directed at the check cases. It states that if the check identifies the represented person the agent who signs on the signature line does not have to indicate agency status. Virtually all checks used today are in personalized form which identify the person on whose account the check is drawn. In this case, nobody is deceived into thinking that the person signing the check is meant to be liable. This subsection is meant to overrule cases decided under former Article 3 such as Griffin v.Ellinger, 538 S.W.2d 97 (Texas 1976) [(a corporate officer who signs a check on a corporate account without designating the capacity in which he signs is personally liable.)]." Given the Massachusetts legislature's adoption of the revised version of Article 3 of the UCC, and the purpose of Mass. Gen. Laws ch. 106, § 3-402 (c) according to the UCC comment, this court finds that the ATR was correct in applying Mass. Gen. Laws ch. 106, § 3-402 (c).
The ATR was correct in determining that according to Mass. Gen. Laws ch. 106, § 3-402 (c) Janet V. Andrew was not transacting business in Massachusetts and that consequently Massachusetts did not have jurisdiction over her. In this case Janet V. Andrew signed three SSI checks payable to the plaintiff for goods ordered by SSI. The checks were printed business account checks of SSI. Therefore, the ATR found that Janet V. Andrew was not transacting business in Massachusetts because she was not individually liable for the three SSI checks under Mass. Gen. Laws ch. 106, § 3-402 (c). This court agrees that Janet V. Andrew was not individually liable on the three SSI checks under Mass. Gen. Laws ch. 106, § 3-402 (c), that she was, therefore, not transacting business with Massachusetts and that consequently, Massachusetts did not CT Page 1564 have jurisdiction over Janet V. Andrew through its long arm statute, Mass. Gen. Laws ch. 223A, § 3.
More importantly, even if the plaintiff was correct, and the court found that Janet V. Andrew was personally liable for signing the three checks, Massachusetts caselaw does not confer jurisdiction over a nonresident defendant for merely making payments to a Massachusetts plaintiff. See "Automatic" Sprinkler Corp. of America v. Seneca FoodsCorp., 361 Mass. 441, 446, 280 N.E.2d 423, (1972) (nonresident defendant that signs purchase order, receives letters from Massachusetts plaintiff, and mailed payments to plaintiff did not transact business in Massachusetts).
Because this court agrees with the ATR that Massachusetts does not have jurisdiction over Janet V. Andrew through its long arm statute, General Laws c. 223A, § 3, it is unnecessary to analyze whether the Massachusetts court's exercise of jurisdiction is consistent with basic due process requirements mandated by the United States Constitution, Massachusetts caselaw and. Connecticut caselaw. See Good HopeIndustries, Inc. v. Ryder Scott Co., supra, 378 Mass. 5-6; Knipple v.Viking Communications, 236 Conn. 602, 606, 674 A.2d 426 (1996). .
Judgment may enter for the defendant, Janet V. Andrew, on the complaint as recommended by the ATR because the ATR was legally and logically correct, the court has found no material error in the report, and there is no other sufficient reason rendering the report unacceptable. Practice Book § 19-17(a). Judgment will enter as stated concerning the other two defendants, Robert S. Andrew and Systech, Inc.
BY THE COURT
Kevin Tierney Judge of the Superior Court